**SO ORDERED: May 26, 2011.**



**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EDWARD M. YANT | ) | CASE NO. 08-15515-AJM-13 |
| | ) | |
| Debtor | ) | |
|  _____ | ) | |
| | ) | |
| JAMES C. HINEMAN | ) | |
| | ) | Adversary Proceeding |
| Plaintiff | ) | No. 09-50222 |
| | ) | |
| vs. | ) | |
| | ) | |
| EDWARD M. YANT | ) | |
| | ) | |
| Defendant | ) | |
|  _____ | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Plaintiff, James Hineman, filed his Complaint for Determination of

Dischargeability on April 2, 2009 against the Debtor, Edward M. Yant, seeking a

1

determination that a certain debt owed to him was nondischargeable under Section 523 of the Bankruptcy Code.  Trial on the Complaint was held on April 28, 2011 wherein the Plaintiff appeared in person and by counsel, Mark R. Regnier and Edward B. Hopper, II. The Defendant appeared in person and by counsel, Thomas G. Bradburn.  At the conclusion of the trial, the Court found that $5,000 of the debt owed to the Plaintiff by the Defendant was nondischargeable.  The Court now makes its written findings and conclusions in accordance with Fed. R. Bankr. P. 7052.

### *Findings of Fact*

1.    Sometime in either 2001 or 2002, the Plaintiff, James Hineman ("Hineman") and the Defendant, Eric C. Yant (the "Debtor") met at a Menard's store in Carmel, Indiana.  Impressed with pictures of the Debtor's' work, Hineman and/or his father hired the Debtor to build a pole barn and, later, to do a farmhouse remodel, as well as other projects.  Hineman was particularly impressed with the pole barns built by the Debtor and testified that the Debtor did a "marvelous job" in that the pole barns he built were "square and straight".

2.    In early 2004, Hineman and the Debtor discussed a project on which the Debtor was working which involved the construction of pole barns for an equestrian facility in Hamilton County, Indiana (the "Hamilton County project").  Having had first hand knowledge of the quality of the Debtor's pole barn construction, and understanding that the loan would be used for pole barn projects, Hineman agreed to loan $20,000 to Yant on April 15, 2004.  Contemporaneously with Hineman's tender of a $20,000 check, he and the Debtor signed a written "agreement" which provided that the loan was to be paid back within a year (April

2

15, 2005) along with $2,500 interest.

3.      The parties' understanding of the nature of the parties' business relationship that

developed as a result of the loan differed markedly.  Hineman testified that he

understood the $20,000 loan to be part of a joint venture between Hineman and

the Debtor wherein the loan would be used by the Debtor build the pole barns

associated with the Hamilton County project for which Hineman would be repaid

his loan and interest of $2,500.  Apparently, if the Hamilton County project turned

out to be profitable, Hineman could choose to advance future loans for the Debtor

to purchase materials to build other pole barns and the two would evenly split the

profits.

4.      The Debtor testified that the $20,000 was nothing more than a loan which he

needed to keep his business afloat and that the parties did not enter into a joint

business venture.   He testified that there were bond and architectural expenses

associated with the Hamilton County project and that he did not have the money

to front these expenses.  The Debtor testified that the loan was to be used in his

business with no restrictions (including no restrictions such as limiting its use to

only pole barn projects), other than the requirement that it be repaid with interest

within a year.

5.      It is undisputed, however, that both Hineman and the Debtor testified that the only

project discussed when the $20,000 loan was made was the Hamilton County

project, which was a pole barn project.

6.      By spring, 2005, and after the Debtor spent $15,000 of the loan on architectural

and bond fees associated with the Hamilton County project, Hamilton County

3

placed additional restrictions on the project and declined to issue a permit for the facility's operation.  The facility closed and the Debtor testified that the general contractor on the project filed bankruptcy without reimbursing the Debtor for the fees he advanced.  The Debtor testified that he lost $48,000 but that he did not file a claim in the general contractor's bankruptcy case.

7.    The Debtor testified that he knew by spring of 2005 (about a year after Hineman loaned him the $20,000) that the Hamilton County project was not going forward, but did not tell Hineman.  Instead, the Debtor testified that he spent the $5,000 balance of the loan on materials to build a bank in Sheridan, Indiana (the "Sheridan bank project") without consulting Hineman. The bank building was completed, but the Debtor testified that he did not get paid for his work on that project and that he earned no profit from either the Hamilton County project or the Sheridan bank project. The Debtor filed his chapter 13 case on December 12, 2008. [1]

8.    Hineman commenced this adversary proceeding by filing his complaint on April 2, 2009.

### Conclusions of Law

1.    Exceptions to discharge under §523 are "to be construed strictly against the creditor and liberally in favor of a debtor."  *In re Scarlata*, 979 F.2d 521,524 (7th Cir. 1992.  A creditor that brings a §523 action seeking a determination of nondischargeability bears the burden of proving all the elements of the statute by

---

[1] No plan has been confirmed, but the Debtor filed an amended plan on March 25, 2011.

4

a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289-90; 111

S.Ct. 654, 661; 112 L.Ed.2d 755 (1991).

2.    Hineman's complaint does not specify under which subsection of §523 he bases

his nondischargeability action.  Count I contains allegations of "misappropriation"

and "conversion".  When Hineman's counsel electronically filed the complaint, the

"event code" chosen to describe the nature of the action was "523(a)(6), willful

and malicious injury".   Like the complaint, Hineman's pre trial statement filed on

June 11, 2009 merely refers to Section 523, without specifying a particular

subsection.  The particular subsection under which Hineman proceeds is

important here, because the Debtor is in a chapter 13 and Section 523(a)(6)-type

claims are dischargeable in a chapter 13 unless and until the Debtor fails to

complete payments under his plan and requests a chapter 13 hardship discharge

under Section 1328(b). [2]

3.    At trial, the evidence more appropriately applied to a claim under §523(a)(2)(A)

and §523(a)(4) in that it pertained to the parties' agreement, their discussion of

only the Hamilton County project, the Debtor's failure to inform Hineman that the

Hamilton County project was not going forward, and the Debtor's subsequent use

of the loan for a purpose not discussed by the parties.  This evidence nonetheless

---

[2] Section 1328(a)(2) lists those type of Section 523 debts that are likewise nondischargeable in a chapter 13 case, but Section 523(a)(6) debts is not among those mentioned.  Section 1328(a)(4) excepts from discharge a debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor *that caused personal injury to an individual or the death of an individual*", but the debt here alleged to be nondischargeable does not fit that description as the allegations against the Debtor here deal with injury to property, not personal injury.  In the event the Debtor fails to complete plan payments and asks for a discharge under the "hardship discharge" provisions of Section 1328(b), such §523(a)(6) type debts would be nondischargeable under Section 1328(c)(2).

5

technically fits under Hineman's very general "Section 523" complaint and the Court concludes that the §523(a)(2)(A) and (a)(4) issues were properly raised. Even if this conclusion is incorrect, the Debtor's counsel argued in his closing statement that Hineman had not proven the elements necessary under §523(a)(2) and did not object to the admission of the evidence presented on the grounds that it raised a new claim against the Debtor not previously pled.  The Court can conform the pleading to the evidence under Fed. R. Bankr. P 7015(b)(2) under such circumstances. [3]

### *§523(a)(2)(A)*

4.     Under §523(a)(2)(A), an individual debtor shall not be allowed a discharge for any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud..." .

5.     Section 523(a)(2)(A) list three separate grounds for dischargeability: actual fraud, false pretenses and false representation.  Although many courts have applied the same test to all three grounds, the Seventh Circuit has distinguished between the three grounds and has formulated two different tests, one for the "false pretenses" and "false representation" grounds and another for the "actual fraud" ground.  *In re Scarpello*, 272 B.R. 691, 699-700 (Bankr. N. D. Ill. 2002); citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000).

---

[3] Fed. R. Bankr. P. 7015(b)(2) provides in part, "When an issue not raised by the pleadings is tried by the parties' express or complied consent, it must be treated in all respects as if raised in the pleadings".

6.     To prevail on a nondischargeability claim under the "false pretenses" or "false representation" grounds set forth in §523(a)(2)(A), a creditor must prove *all* of the following elements: (1) the debtor obtained money, property or services through representations which the debtor either knew to be false or made with such reckless disregard for the truth as constitute a willful misrepresentation; (2) the debtor possessed scienter, i.e. an intent to deceive; and (3) the creditor justifiably relied on the false representation to his detriment.  *Scarpello*, 272 B.R. at 700.  [4]

7.     A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement or conduct.  *Id*.  "False pretenses" include "implied misrepresentations or conduct intended to create and foster a false impression".  *Mem'l Hospital v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N. D. Ill. 1996).

8.     A creditor must also prove the debtor possessed the requisite scienter under all prongs of §523(a)(2)(A).  For "false representation" and "false pretenses" purposes, a debtor's intent to deceive is measured by his or her subjective intention at the time the representation was made.  *Scarpello*, 272 B.R. at 700.

9.     Finally, the creditor's reliance on the debtor's false representation or false

---

[4] The Court's decision here is not based on the "actual fraud" prong of §523(a)(2)(A), but the different test employed within the Seventh Circuit bears mentioning.  "Actual fraud" is broader than misrepresentation in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability under the "actual fraud" prong of §523(a)(2).  *McClellan*, 217 F.3d at 893; *Scarpello*, 272 B.R. 701.  Rather, "actual fraud" is defined as "any deceit, artifice, trick or design involving direct and active operation of the mind used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated".  *McClellan*, 217 F.3d at 893 (citations omitted). In such cases, a creditor must prove (1) a fraud occurred; (2) the debtor was guilty of intent to defraud; and (3) the fraud created the debt that is the subject of the nondischargeability action. *McClellan*, 217 F.3d at 893; *Scarpello*, 272 B. R. at 701.

pretense must be "justifiable", which is an intermediate level of reliance, i.e., less than "reasonable" reliance but more than reliance in fact.  *Id.*

10.   The uncontroverted testimony at trial was that the only type of project discussed with respect to the purpose of the loan was a pole barn project and no other type of project was discussed.  The Hamilton County project fit that bill.  Indeed, Hineman had seen other pole barns built by the Debtor and was impressed with their construction and testified that the Debtor did "a marvelous job with pole barns".  Hineman also testified that the Debtor's work on the farmhouse (not a pole barn project) was "not first class" but that it looked "decent now".  The upshot is that Hineman loaned money to the Debtor for pole barn projects and not for any other type of project because he had firsthand knowledge of the Debtor's ability regarding pole barn construction and indeed believed that pole barn construction was the Debtor's area of expertise.

11.   The Debtor acknowledged that only pole barn projects were discussed when the loan was made but nonetheless testified that the loan was a "general" loan that could be used for whatever purpose he wanted.  In the Court's opinion, the Debtor represented the loan to be for a pole barn project but intended to use the money for purposes other than pole barn construction.  It is the Court's belief that he did this knowing full well that Hineman would not agree to make the loan for any purpose other than the pole barn project.  So, the Debtor represented that the loan would be used for one project without informing Hineman that he might use the money for something else.  The Debtor's conduct in failing to clarify that the loan could be used for projects other than the Hamilton County project gave

8

Hineman the false impression that the loan would be used for no other purpose other than the pole barn to be constructed in Hamilton County.

12.     Hineman justifiably relied to his detriment on the false impression created by the Debtor.  From Hineman's view, the Debtor was good at constructing pole barns and figured this was the Debtor's only line of work for which the loan would be used.  Thus, the Court concludes that $5,000 of the loan used for the Sheridan bank project was obtained by false pretenses or false representations and omissions and therefore is nondischargeable under §523(a)(2)(A).  The $15,000 used for the Hamilton County project was used for the purpose for which the loan was intended and thus is dischargeable.

### *§523(a)(4)*

13.     Under §523(a)(4), an individual debtor shall not be allowed a discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny".

14.     Nothing in the record suggests that the Debtor was acting in a fiduciary capacity, and thus only the "embezzlement" and "larceny" elements of §523(a)(4) apply here.

15.     "Embezzlement" under §524(a)(4) is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come".  "Larceny" under §523(a)(4) requires a showing that the debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to his own use without the owner's consent.  *Scarpello*, 272 B.R. at 703.  Embezzlement differs from larceny in that the initial taking of property was

9

lawful or with the consent of the owner. *Id*.

16. There is no doubt that the $20,000 came into the Debtor's hands lawfully. The dissipation of $5,000 (1) for a purpose the Debtor clearly knew had not been intended by Hineman and (2) without Hineman's consent falls under the definition of "embezzlement". The $5,000 debt is nondischargeable under §523(a)(4).

17. Hineman also seeks nondischargeability with respect to rents of $300 and a $167 allegedly collected by the Debtor. The testimony at the trial indicated that the Debtor neither collected nor received either of these sums and therefore they are dischargeable.

18. The appropriate judgment shall follow.

**# # #**

Distribution:

Mark R. Regnier and Edward B. Hopper, II, Counsel for the Plaintiff, James C. Hineman
Thomas G. Bradburn, Counsel for the Defendant, Edward M. Yant
Case Trustee